IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KRAIG STEMME, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-2635-N |
| | § | |
| BLUE CROSS BLUE SHIELD OF | § | |
| KANSAS CITY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Blue Cross Blue Shield of Kansas City's ("BCBS")

motion for summary judgment [38] and Plaintiff Kraig Stemme's cross-motion for summary

judgment [45]. The Court grants BCBS's motion and denies Stemme's motion.

## I. THE PARTIES' DISPUTE OVER BCBS'S COVERAGE
### OF STEMME'S MEDICAL TREATMENT

Stemme was, at all times relevant to this lawsuit, an employee of Synbiotics

Corporation ("Synbiotics"). BCBS is an insurer of the group health policy, the Health

Benefits Certificate for Synbiotics Corporation (the "Health Plan"), sponsored by

Synbiotics.[1] Decl. of Stacy Woods ¶¶ 4–5, Def.'s App. Supp. Summ. J. [hereinafter Def.'s

App.] Ex. A, at 1–2. In December 2010, Stemme was diagnosed with prostate cancer.

Stemme's physicians recommended that Stemme undergo proton based radiation treatment

---

[1]For the purposes of this motion, BCBS admits that the Health Plan qualifies as a
"plan" as defined by 29 U.S.C. § 1002(1) and that Stemme was a "participant" in the Health
Plan as defined by 29 U.S.C. § 1002(7).

("PBRT").  Stemme submitted a claim to BCBS seeking coverage of PBRT, and BCBS

denied the claim.  This lawsuit is about whether that denial was proper.

### A.  Relevant Health Plan Provisions

Several sections of the Health Plan and related documents are relevant to this case.

First, the Health Plan defines the term "medically necessary" as follows:

> services and supplies which are essential to the health of a Covered Person and
> are:
>
> a.  Appropriate and necessary for the symptoms, diagnosis and treatment of a
> medical or surgical condition;
>
> b. *Consistent with acceptable medical practice according to the national Blue
> Cross and Blue Shield Association's uniform medical policy (as amended from
> time to time)*;
>
> c.  Not primarily for the convenience of the Covered Person, nor the Covered
> Person's family, Physician or another provider;
>
> d.  Consistent with the attainment of reasonably achievable outcomes; and
>
> e.  Reasonably calculated to result in the improvement of the Covered Person's
> physiological and psychological functioning.
>
> Determinations regarding Medical Necessity, just like any other determination,
> may be appealed pursuant to the grievance procedure.

Def.'s App. Ex. A-1, at 16 (emphasis added).

Next, section D of the Health Plan, entitled "Exclusions and Limitations," provides

that "Covered Services do not include, and no Benefits will be provided for any of the

following services, supplies, equipment or care; or for any complications, related to, or

received in connection with, such services, supplies, equipment or care that are . . . [n]ot

Medically Necessary." *Id.* at 19.

ORDER – PAGE 2

Finally, BCBS also issued an internal medical policy concerning PBRT (the "Medical Policy"). The Medical Policy states that it was "[r]eviewed with literature search" in October 2010, two months before Stemme's cancer diagnosis. Def.'s App. Ex. A-2, at 20. According to the Medical Policy, PBRT "is considered **not medically necessary** in patients with clinically localized prostate cancer, because the clinical outcomes with this treatment have not been shown to be superior to other approaches . . . , yet [PBRT] is generally more costly than these alternatives." *Id.* at 32 (emphasis in original).

### B. BCBS's Denial of Stemme's Claim Through Encompass

Stemme's physician, Dr. Seungtaek Choi, requested that BCBS cover Stemme's PBRT treatment. Woods Decl. ¶ 9, Def.'s App. Ex. A, at 2. BCBS referred the request to Encompass Health Management Systems ("Encompass"), which reviews requests for medical services from BCBS members living in Texas.[2] BCBS recommended that Encompass deny Stemme's request for PBRT coverage. *Id.* ¶ 11, Def.'s App. Ex. A, at 2–3. On March 15, 2011, Encompass informed Stemme and Choi by letter (the "First Letter") that it had determined that the Health Plan did not cover Stemme's PBRT, stating that its determination was "based upon medical necessity." Def.'s App. Ex. A-3, at 34. The First Letter stated that a medical doctor, board certified in oncology, had made the recommendation that the Health Plan did not cover Stemme's PBRT, but the letter did not include the recommending doctor's

---

[2]BCBS refers these matters to Encompass in order to comply with Texas law. Woods Decl. ¶ 10, Def.'s App. Ex. A, at 2.

name. *Id.* The letter further noted that the determination was a recommendation that Encompass would pass onto BCBS. *Id.*

After receiving the First Letter, Choi requested a peer-to-peer review with the Encompass recommending physician, Dr. Mark Levin. Choi later spoke with Levin, discussing the advantages of and literature regarding PBRT. Levin, however, explained his reasoning for recommending that BCBS deny Stemme's claim and declined to reconsider his decision. Def.'s App. Ex. A-4, at 47–49. Encompass advised Stemme and Choi of Stemme's right to appeal, both in the First Letter and in the peer-to-peer review with Levin. Def.'s App. Ex. A-3, at 36, Ex. A-4, at 49.

### C. Stemme's First Appeal

Choi requested an appeal (the "First Appeal") in his conversation with Levin. Def.'s App. Ex. A-4, at 49. On March 28, 2011, Encompass sent another letter to Stemme (the "Second Letter"). In the Second Letter, Encompass informed Stemme that a medical doctor certified in oncology had recommended that Encompass's original determination be upheld. Def.'s App. Ex. A-5, at 59. Again, though, the letter did not include the name of the recommending doctor. *Id.* The Second Letter, like the First Letter, noted that Encompass's recommendation was "based upon medical necessity" and advised Stemme of his right to appeal further. *Id.*

### D. Stemme's Second Appeal

In May 2011, Stemme again appealed BCBS's decision (the "Second Appeal"). In the letter informing BCBS of the Second Appeal, Stemme set out the various arguments in

favor of his position. At this point, Stemme retained counsel to assist him, and a decision regarding Stemme's second appeal was put on hold for sixty days. After that period, BCBS used MES Solutions ("MES") to process the Second Appeal. In August 2011, a five-member grievance panel reviewed Stemme's appeal. The panel comprised three physicians employed by MES (the "MES Physicians"), a director-level BCBS representative, and a BCBS policyholder. The MES Physicians were all board certified in medical oncology. Woods Decl. ¶ 33, Def.'s App. Ex. A, at 6. One of the MES Physicians discussed the appeal with Dr. Sameer Keole, a physician retained by Stemme. The grievance panel voted unanimously to uphold BCBS's decision to deny Stemme's request for PBRT. *Id.* ¶ 32, Def.'s App. Ex. A, at 6.

After the panel reached its decision, the three MES Physicians issued a peer review report summarizing their findings. Each physician stated that BCBS applied the Medical Policy correctly. Def.'s App. Ex. A-9, at 78, 83, 84. The lead physician concluded that the Medical Policy "does not consider [PBRT] medically necessary." *Id.* at 80. On August 23, 2011, BCBS sent Stemme a letter informing him of the grievance panel's decision (the "Third Letter"). Def.'s App. Ex. A-10, at 86.

### E.  *BCBS's Voluntary Review of Stemme's Claim*

Stemme objected to the grievance panel's decision in a letter to BCBS on September 6, 2011. Def.'s App. Ex. 11, at 88–92. The letter outlined Stemme's position that PBRT was medically necessary in Stemme's case, and it included literature in support of that position. *Id.* Neither the Health Plan nor any applicable law required BCBS to take this

ORDER – PAGE 5

letter into consideration, but Dr. Bryan Sitzmann, medical director for BCBS, reviewed the letter and accompanying documentation anyway. Woods Decl. ¶ 37, Def.'s App. Ex. A, at 7. Sitzmann concluded that BCBS's denial of Stemme's request for PBRT was appropriate and that no information in the letter or attached documentation supported the conclusion that the Health Plan covers PBRT. *Id.*

On September 13, 2011, BCBS sent Stemme a final letter detailing the grievance panel's findings (the "Final Letter"). Def.'s App. Ex. A-12. This letter states that the MES Physicians "agreed the [PBRT] is not medically necessary." *Id.* at 94. The Final Letter further stated that, "[i]n addition to the considered service being considered not medically necessary, the reviewers determined the request would also be considered investigational." *Id.* The letter notes that Stemme had at that point exhausted his available internal appeals. *Id.* at 96.

### F. Prior Claims for PBRT Under BCBS's Health Plans

BCBS's current Medical Policy regarding PBRT for conditions like Stemme's has been in effect since August 2008. Since that time, BCBS has received five requests for authorization for PBRT for prostate cancer. Def.'s App. Ex. C, at 153. In all five cases, BCBS initially denied the requests. In one case, however, Encompass subsequently recommended approval of the claim (the "Approved Claim"). *Id.* at 154. The individual who submitted the Approved Claim (the "Approved Claimant"), like Stemme, suffered from early-onset prostate cancer, and both the Approved Claimant and Stemme faced similar probabilities that their cancer would spread. Plaintiff's Appendix Supp. Cross-Mot. Summ.

J. [hereinafter Pl.'s App.] 409, 416. Based on the Encompass physician's review and recommendation, BCBS approved and paid the Approved Claim. *Id.* at 400.

### G.  The Procedural Posture of This Litigation

After BCBS's final decision to deny his claim, Stemme filed suit in this Court, asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002, *et seq.* Stemme alleges that (1) BCBS committed procedural violations in violation of 29 U.S.C. § 1133, and that (2) BCBS's denial of coverage was arbitrary and capricious, thus wrongfully denying him benefits under 29 U.S.C. § 1132(a)(1)(B).[3] BCBS and Stemme have both moved for summary judgment.

## II.  STANDARD OF REVIEW

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

---

[3]Stemme also asserts that BCBS's conflict of interest influenced its decision to deny Stemme's claim. The Fifth Circuit, however, has held that a court is to consider a conflict of interest "only upon reaching the second step" of the court's abuse-of-discretion analysis. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). Because the Court undertakes an abuse-of-discretion analysis below, *see infra* section IV, the Court declines to address Stemme's conflict-of-interest allegation as a separate claim.

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

ORDER – PAGE 8

### III. BCBS SUBSTANTIALLY COMPLIED WITH REQUIRED PROCEDURES IN THE ADMINISTRATION OF STEMME'S CLAIM

Stemme asserts that he was denied a full and fair review of his claim because BCBS committed two procedural violations. Section 1133 of ERISA provides that an employee benefit plan must

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (2008). A court evaluates challenges to ERISA procedures under a "substantial compliance" standard. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006). "This means that '[t]echnical noncompliance' with ERISA procedures 'will be excused' so long as the purposes of section 1133 have been fulfilled." *Id.* at 393 (quoting *White v. Aetna Life Ins. Co.*, 210 F.3d 412, 414 (D.C. Cir. 2000)).

#### A. The Second Letter's Failure to Identify the Reviewing Physician in the First Appeal Did Not Violate Federal Regulations

Stemme first points out that BCBS failed in the Second Letter to identify the Encompass physician who reviewed BCBS's decision in the First Appeal, and that it failed to identify by name the MES Physicians involved in the Second Appeal. ERISA regulations require plan administrators to "[p]rovide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(3)(iv). Moreover, the regulations

specify that "[t]he claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination" if they do not so provide. 29 C.F.R. § 2560.503-1(h)(3).

Stemme apparently reads the Code of Federal Regulations to require ERISA administrators to disclose to the claimants the names of reviewing medical experts as a matter of course in its correspondence with claimants. The regulation, however, states that a claims *procedure* must "provide for" the identification of a reviewing physician. *Accord Provencio v. SBC Disability Income Plan*, No. SA-05-CA-0032-WWJ, 2006 WL 3927168, at *7 (W.D. Tex. Dec. 6, 2006). Stemme has not alleged or pointed to evidence supporting the allegation that BCBS's *procedure* was deficient with respect to the First or Second Appeal. He has, rather, alleged only that the Second and Third Letters themselves did not include the reviewing physicians' names. This lack of identification on its own does not violate federal regulations. The First Letter, too, does not identify Levin as the reviewing physician, but BCBS disclosed Levin's identity when Choi requested a peer-to-peer conference. BCBS's procedures provided for Levin's identification, in compliance with the relevant regulation. Stemme has not demonstrated that BCBS had no similar procedures in place with respect to the First or Second Appeal.

There is, furthermore, no evidence in the record suggesting that Stemme's lack of knowledge of the reviewing physician's name deprived Stemme of a full and fair review of his claim. *See Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994) (defining "full and fair review" as "knowing what evidence the decision-maker relied upon,

having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." (quoting *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 893-94 (10th Cir. 1988)).  The Court accordingly finds that there is no evidence that BCBS violated the law by not including the reviewing physician's name in the Second Letter. *See Vaughn v. Unum Life Ins. Co. of Am.*, No. 3:06-CV-310, 2007 WL 2818005, at *7 (S.D. Tex. Sept. 26, 2007) (finding substantial compliance where administrator did not include names of medical experts used in administrative review); *Provencio*, 2006 WL 3927168, at *8 (same).

## B. BCBS's Inclusion of an Additional Rationale for Denial in the Final Letter Does Not Constitute a Procedural Violation

Stemme also asserts that BCBS impermissibly added a rationale for denying Stemme's claim in the Final Letter.  Analyzing this assertion requires a careful review of Stemme's appeal process.  Throughout the review and appeals process, BCBS based its denial of Stemme's claim on its conclusion that PBRT is not "medically necessary."  When Stemme's attorney asked for Stemme's case file from BCBS prior to the Second Appeal, however, BCBS included with the file a portion of the Health Plan defining the meaning of the term "experimental/investigative."  This term is defined in the Health Plan and provides another possible basis for denying a claim.  The term was highlighted, and the portion of the Health Plan defining "medically necessary" was not included with the case file.  Pl.'s App. 376–82.  Several weeks later, BCBS sent Stemme's attorney a complete copy of the Health Plan.  Woods Decl. ¶ 26, Def.'s App. Ex. A, at 5.  In support of his position during the

Second Appeal, Stemme presented evidence regarding why PBRT was medically necessary and, even though he acknowledged that BCBS had not denied his claim on this basis, why PBRT was not experimental or investigative. Pl.'s App. 103–05. BCBS sent Stemme a preliminary summary in the Third Letter, sent shortly after the Second Appeal, and included with it the MES Physicians' report. Def.'s App. Ex. A-10. Stemme had not had access to this report before the Second Appeal. Stemme asserts that the MES Physicians upheld BCBS's denial on the basis that PBRT was "experimental/investigative." The record, however, does not support this conclusion; rather, all three reports state that the BCBS Medical Policy considers PBRT to be not "medically necessary." Def.'s App. Ex. A-9, at 78, 81, 84.[4] Stemme responded to the reports by letter and attached documentation supporting his position. The BCBS medical director reviewed that letter, as well as the

---

[4]One of the reviewers' analyses states that PBRT "is not considered medically necessary since it would be considered investigational." *Id.* at 84. Stemme believes this means that this reviewer upheld BCBS's decision because he believed it was "experimental/investigative." There is no indication, however, that the reviewer's use of the word "investigational" is meant to incorporate the Health Plan's definition of "experimental/investigative." Rather, the reviewer goes on immediately to note that "[t]here is no significant evidence in the medical literature that can show that [PBRT] is more effective than the standard of care which would be external beam radiation therapy." *Id.* This language mirrors language in the Medical Policy stating that PBRT "is considered **not medically necessary** in patients with clinically localized prostate cancer, because the clinical outcomes with this treatment have not been shown to be superior to other approaches including intensity modulated radiation therapy (IMRT) or conformal radiation therapy." Def.'s App. Ex. A-2, at 32 (emphasis in original). This similarity suggests that the reviewer was aware both of BCBS's position, as expressed in the Medical Policy, that PBRT is not medically necessary and of the Medical Policy's rationale for that position. The Court accordingly concludes that the MES reviewers upheld BCBS's denial of Stemme's claim based on the rational that the Health Plan's definition of "medically necessary" – not "experimental/investigative" – precluded coverage.

ORDER – PAGE 12

attached documentation, and determined that neither contained evidence sufficient to cause BCBS to reconsider its decision before BCBS sent Stemme the Final Letter.  In the Final Letter, BCBS explained that the three MES reviewing physicians had concluded that PBRT was both not medically necessary and investigative.  Def.'s App. Ex. A-12, at 94.  The crux of Stemme's argument is that BCBS impermissibly changed its basis for denying Stemme's claim from concluding that PBRT was not medically necessary to concluding that it was experimental or investigative.

As stated above, an ERISA plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial."  11 U.S.C. § 1133(1).  "Section 1133 requires an administrator to provide review of the specific ground for an adverse benefits decision." *Robinson*, 443 F.3d at 393.  An administrator may not "change[] its reasoning" upon review of a denial of benefits.  *Id.*  Moreover, the Ninth Circuit has held that "[w]hen an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006).  The Ninth Circuit's rationale for this holding is that "a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA."  *Id.*

In this case, however, BCBS did not change its reason for denying Stemme's claim, and it did not insulate any new reasons from review.  First, though BCBS certainly appears

to have *added* an additional reason for denial – that PBRT is investigative – in the Final Letter, there is no evidence that it *changed* its reasoning. *Cf. Robinson*, 443 F.3d at 393–94 (finding violation of section 1133 where administrator abandoned original reason for denial and substituted another one). Thus, BCBS's actions do not run afoul of relevant Fifth Circuit precedent. Second, BCBS did not insulate the "additional" rationale from review. In fact, Stemme, not BCBS, addressed the issue of whether PBRT is "experimental/investigative." Stemme, of his own volition, brought the issue up in the Second Appeal, after BCBS had sent his counsel the definition of the term found in the Health Plan. Stemme also addressed this issue in his letter to BCBS after the second appeal, and BCBS's medical director reviewed this letter before reaching a final decision on Stemme's claim. *Cf. Abatie*, 458 F.3d at 974 (finding violation of section 1133 where administrator provided no avenue for review of additional rationale).

Moreover, the reference to the "experimental/investigative" rationale in the final letter to Stemme was not the first reference to this term in the course of Stemme's appeals. BCBS erroneously supplied Stemme's counsel with the definition of "experimental/investigative" before the Second Appeal, but it also corrected its mistake by supplying Stemme's counsel with the entire Health Plan a few weeks later. The First and Second Letters were unmistakably clear that BCBS denied his claim because it considered PBRT to be not medically necessary. BCBS's inclusion of the definition of "experimental/investigative" in its correspondence with Stemme's counsel does not change this fact. Despite the clarity of the letters, Stemme addressed the "experimental/investigative" question at the Second Appeal

and his subsequent letter to BCBS. In bringing up the "experimental/investigative" rationale in the Final Letter, BCBS was directly responding to evidence that Stemme, acting on his own, had introduced into the appeal process.

Taking these facts into account, the Court concludes that any violation BCBS committed of section 1133 by including the "experimental/investigative" rationale in the Final Letter did not contravene the purpose of section 1133. BCBS did not change its reasoning, and it provided for review of each rationale asserted in the Final Letter. Moreover, Stemme himself introduced the "experimental/investigative" rationale into the appeal process. For these reasons, BCBS did not violate section 1133. Even considering both of the alleged procedural violations together, the Court concludes that BCBS substantially complied with ERISA's procedural requirements.

## IV. BCBS DID NOT ABUSE ITS DISCRETION

Under ERISA, a plan administrator has discretion to find facts related to coverage. A court reviews an administrator's findings of fact, therefore, under an abuse-of-discretion standard. *See Love v. Dell, Inc.*, 551 F.3d 333, 336 (5th Cir. 2008). On the other hand, a court reviews an ERISA administrator's construal of the terms of a plan de novo, unless the plan itself gives the administrator authority to construe the plan's terms and apply its provisions. *Id.* In the latter case, a court reviews the administrator's decisions under an abuse-of-discretion standard. *See Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). The Court determines – and the parties do not dispute – that the Health Plan provides BCBS the discretion to construe and apply the Health Plan's provisions.

*See* Pl.'s App. 271 (noting that BCBS "reserve[s] full discretion and authority to interpret and apply the provisions of [the Health Plan] to the extent permitted by law"). The Court accordingly reviews both BCBS's factual finding that Stemme's PBRT was not medically necessary and its construal of the plan's terms in such a manner as to deny Stemme's claim for abuse of discretion.

### A. BCBS Did Not Abuse Its Discretion in Finding That PBRT Was Not Medically Necessary for Stemme

When BCBS determined that Stemme's requested PBRT was not medically necessary, it made a finding of fact. A court's review of a finding of fact by an ERISA administrator for abuse of discretion "equates to a ruling on whether the administrator's determination was 'arbitrary and capricious.'" *See Love*, 551 F.3d at 336 (employing this standard of review when administrator concluded that treatment was not medically necessary). A court will "affirm the administrator's findings if they are supported by 'substantial evidence,' which has been defined as 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc)).

In this case, substantial evidence supports BCBS's finding that PBRT was not medically necessary for Stemme. As BCBS points out, the Medical Policy comes to that very conclusion, and the Medical Policy is reviewed annually. Def.'s App. Ex. A-2, at 20. BCBS updated this section of the Medical Policy on October 8, 2010, including with a literature search. *Id.* at 31. The October 2010 update specifically notes that "[t]hree recent review articles comment that current data do not demonstrate improved outcomes with use

ORDER – PAGE 16

of proton beam therapy (PBT) for prostate cancer" and goes on to summarize those articles. *Id.* at 27. This evidence qualifies as "substantial" under the Fifth Circuit's test.

Stemme marshals significant evidence supporting the medical necessity of PBRT for prostate cancer – evidence that it brought to the attention of Encompass, MES, and BCBS. This evidence, however, does not prove conclusively that PBRT is medically necessary; rather, in light of the reviews cited in the Medical Policy, it indicates that medical opinion differs as to the necessity of the procedure in these circumstances. Moreover, the summary judgment evidence demonstrates that the individuals who reviewed BCBS's initial decision to deny Stemme's claim considered Stemme's evidence but concluded that the opposing evidence was more persuasive. For instance, the Second Letter notes that, in the First Appeal, the reviewing doctor, who was certified in medical oncology, engaged in a "careful medical review of the information supplied to us by the attending physician." Def.'s App. Ex. A-5, at 59. Likewise, BCBS's Third Letter states that the grievance panel in the Second Appeal made its decision "[f]ollowing review of all documentation and information provided to" BCBS. *Id.* Ex. A-12, at 94. Finally, BCBS's medical director reviewed Stemme's objection to the grievance panel's review, looking at both the "letter and accompanying documentation." Woods Decl. ¶ 37, Def.'s App. Ex. A, at 7. The Supreme Court has held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *accord Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469–70 (5th Cir. 2010) (finding substantial evidence supported administrator's decision where

administrator credited its evidence over evidence of claimants' physicians); *Love*, 551 F.3d at 3367 (same).

Even if the evidence supporting Stemme's position were more convincing than the evidence supporting BCBS's, there is nonetheless more than a scintilla of evidence supporting BCBS's conclusion, and a reasonable mind might accept that evidence as adequate to support that conclusion. There is thus substantial evidence supporting BCBS's finding. The Court consequently finds that BCBS acted within its discretion when it found that Stemme's requested PBRT was not medically necessary.

### B. To the Extent That BCBS's Construed the Health Plan, that Construal Was Legally Correct and Thus Not an Abuse of Discretion

As discussed above, BCBS made a finding of fact when it determined that Stemme's requested PBRT was not medically necessary. The parties, however, also dispute whether BCBS abused its discretion by construing the Health Plan's term "medically necessary" to not include PBRT in Stemme's case. To the extent that BCBS indeed construed the term "medically necessary" – either in the Medical Policy or in BCBS's review of Stemme's claim – that construction was not an abuse of discretion.

A court applies a two-step process when reviewing an administrator's construal of the terms of a plan for abuse of discretion. First, a court determines whether the determination was legally correct: "[i]f so, the inquiry ends and there is no abuse of discretion." *Id.* The Fifth Circuit has identified three factors a court should consider in determining whether an administrator's interpretation is legally correct: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading

of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). The second factor is the most important of the three. *Id.* at 313. Only if f the court concludes that the administrator's interpretation was not legally correct does it proceed to the second step: determining whether the interpretation was an abuse of discretion. *See Stone*, 570 F.3d at 257.

    ***1. The Decision Was Legally Correct.*** – Analysis of the factors set out by the Fifth Circuit demonstrates that, while the question is a close one, BCBS's interpretation of the Health Plan was legally correct.

    First, BCBS did not apply the Health Plan uniformly. A court addressing the question of uniform application looks to whether a plan administrator has "consistently appl[ied] the Plan to similarly situated applicants." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2010 WL 2563429, at *12 (N.D. Tex. June 22, 2010) (quoting *Stone*, 570 F.3d at 258), *aff'd*, 420 F. App'x 364 (5th Cir. 2011) (unpub). Upon the recommendation of Encompass, BCBS approved the Approved Claim, but it denied Stemme's claim. The summary judgment record indicates that the Approved Claimant and Stemme were similarly situated, and BCBS does not dispute that characterization. BCBS argues that it did not agree with Encompass's recommendation to approve the Approved Claim, but that its policy is to accept Encompass's recommendations, whether or not it agrees with them. Whatever BCBS's internal policy, however, the summary judgment evidence shows that it applied its policy on approving PBRT in patients with localized prostate cancer

differently in different cases.  The first factor thus weighs in favor of finding that BCBS's interpretation of the Health Plan was not legally correct.

Second, and most importantly, BCBS's interpretation that the term "medically necessary" does not include Stemme's requested PBRT is consistent with a fair reading of the Health Plan.  In determining consistency with a fair reading, the plain language of the Health Plan is paramount.  *See Crowell*, 541 F.3d at 314.  Courts "interpret ERISA plans 'in [their] ordinary and popular sense as would a person of average intelligence and experience.' In other words, [courts] must interpret ERISA provisions as they are likely to be 'understood by the average plan participant, consistent with the statutory language.'" *Crowell*, 541 F.3d at 314 (quoting *Tucker v. Shreveport Transit Mgmt. Inc.*, 226 F.3d 394, 398 (5th Cir. 2000)) (first alteration in original).  The parties agree that the term "medically necessary" in the Health Plan means, among other things, "[c]onsistent with acceptable medical practice according to the national Blue Cross and Blue Shield Association's uniform medical policy (as amended from time to time)."  Def.'s App. 16.  And the Medical Policy expressly states that PBRT is not medically necessary for patients with Stemme's condition.  *Id.* at 32.  Considering the plain language of the Health Plan, BCBS's interpretation is consistent with the plan's terms.  This factor thus weighs in favor of finding that BCBS's interpretation is legally correct.

Third, the Court looks to any  unanticipated costs.  In analyzing this factor, the Court looks to both of the interpretations the parties offer.  *See Crowell*, 541 F.3d at 316.  If either of the interpretations would result in substantial unanticipated costs to the Health Plan, that

ORDER – PAGE 20

interpretation is less likely to be legally correct. *See id.* (quoting *Batchelor v. Int'l Broth. of Elec. Workers Local 861 Pension & Ret. Fund*, 877 F.2d 441, 445 (5th Cir. 1989)). In this case, neither party has pointed to summary judgment evidence that any given interpretation would result in substantial unanticipated costs, so the factor carries no weight in the Court's analysis.

On balance, then, the first and second factors are in tension: the first weighs against concluding that BCBS's decision was legally correct, and the second in favor. Because the second factor is the more important of the two, *see Crowell*, 541 F.3d at 313, the Court concludes that BCBS's determination was legally correct. The Court need not proceed to the second step of the abuse-of-discretion analysis: no abuse of discretion occurred. *See Stone*, 570 F.3d at 252 (inquiry ends after first step).

**2. *Even if the Decision Were Not Legally Correct, the Court Would Find That No Abuse of Discretion Occurred.*** – Stemme argues that BCBS's denial of benefits was an abuse of discretion for three reasons: (1) BCBS's earlier approval of the Approved Claim; (2) BCBS's reliance on the Medical Policy, which Stemme alleges was out of date; and (3) BCBS's use of allegedly unqualified reviewing physicians. Moreover, Stemme points to BCBS's conflict of interest. None of these amounts to an abuse of discretion.

First, the court addressed the question of the Approved Case above. *See supra* section IV.B.1. While its adoption of contradicting Encompass recommendations regarding PBRT in the treatment of prostate cancer means that its treatment of claims under the Health Plan was nonuniform, BCBS's treatment of similar claims was not arbitrary or capricious.

ORDER – PAGE 21

BCBS's policy was to accept Encompass's recommendation, whether or not that recommendation accorded with BCBS's own view of the Health Plan. This it had the discretion to do. Moreover, the Approved Claim has no direct bearing on whether BCBS acted arbitrarily or capriciously in *Stemme's* case.

Second, there is no evidence that the Medical Policy was out of date. Rather, it was reviewed in October 2010, two months before Stemme was diagnosed with prostate cancer. Moreover, as explained above, substantial evidence supported BCBS's finding that PBRT was not medically necessary. *See supra* section IV.A.

Third, Stemme points out that the physicians whose opinions BCBS relied upon were internal medicine physicians with subspecialties in oncology. Stemme notes that they were not *radiation* oncologists, and radiation oncologists are the only physicians who prescribe and deliver PBRT. Stemme, however, does not point to competent summary judgment evidence proving that the reviewing doctors lacked the qualifications and expertise to review Stemme's claim and determine whether PBRT was medically necessary.

Finally, Stemme asserts that BCBS's inherent conflict of interest – based on its dual role of determining benefits and paying claims – influenced its decision to deny Stemme's claim. The Supreme Court has held that a court reviewing an ERISA administrator's decision should take into account the structural conflict of interest that exists when an administrator makes benefits determinations and funds the benefit plan. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). This conflict, however, is only a factor in such a review. *See id.* This factor's weight varies, depending on the circumstances of each case.

*Id.* at 117–18.  The Fifth Circuit has determined that the proper place to consider such a conflict is in the second step of the abuse-of-discretion analysis.  *See Stone*, 570 F.3d at 257. It is true that "a reviewing court may give more weight to a conflict of interest, where the circumstances surrounding the plan administrator's decision suggest 'procedural unreasonableness.'"  *Schexnayder*, 600 F.3d at 469 (citing *Glenn*, 554 U.S. at 118).  In this case, however, there was no procedural unreasonableness: BCBS afforded Stemme a reasonable opportunity for a full and fair review of BCBS's decision.  *See supra* section III. Moreover, substantial evidence supported BCBS's decision.  *See supra* section IV.A. Stemme points to no additional factors that demonstrate that the Court should accord special weight to BCBS's conflict of interest.

On balance, Stemme points to no factors outside BCBS's structural conflict of evidence that suggest that it abused its discretion in this case.  Thus, if BCBS's interpretation of the Health Plan was not legally correct, the Court would find, even bearing in mind BCBS's conflict of interest, that no abuse of discretion occurred.[5]

### CONCLUSION

For the reasons stated above, the Court grants BCBS's motion for summary judgment and denies Stemme's cross-motion for summary judgment.

---

[5]Because BCBS is entitled to summary judgment on all of Stemme's substantive claims, it is also entitled to summary judgment on Stemme's claim for attorney's fees.

ORDER – PAGE 23

Signed February 25, 2013.


_____
David C. Godbey
United States District Judge